UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAN MATTSON and ERIC MATTSON, individually and as a class representative on behalf of others similarly situated<br><br>        Plaintiffs,<br><br>   v.<br><br>AETNA LIFE INSURANCE CO. D/B/A AETNA, INC., THE RAWLINGS COMPANY, LLC D/B/A/ THE RAWLINGS GROUP, S.N.J. REGIONAL EMPLOYEE BENEFIT FUN, COOPER UNIVERSITY HEALTH CARE D/B/A COOPER UNIVERSITY HOSPITAL and D/B/A COOPER HOSPITAL/UNIVERSITTY MEDICAL CENTER and D/B/A COOPER UNIVERSITY PHYSICIANS, and JOHN DOE INDIVIDUALS and BUSINESS 1-20,<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 14-6809<br>     (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

LAW OFFICE OF LEWIS ADLER
By: Lewis G. Adler, Esq.
26 Newton Avenue
Woodbury, New Jersey 08096
      Counsel for Plaintiffs

LOWEY DANNENBERG COHEN & HART PC
By: Uriel Rabinowitz, Esq.
One North Broadway, Suite 590
White Plains, NY 10601
      Counsel for Defendants Aetna Life Insurance Co. and
      The Rawlings Company

BROWN & CONNERY, LLP
By: Karen A. McGuinness, Esq.
360 Haddon Avenue

PO Box 539
Westmont, NJ 08108
          Counsel for Defendant S.N.J. Regional Employee Benefit
          Fund

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
By:  Dante C. Rohr, Esq.
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
          Counsel for Defendant Cooper University Health Care

**IRENAS,** Senior United States District Judge:

     Plaintiffs Joan Mattson and her son, Eric Mattson, bring

this putative class action against Defendants Aetna Life

Insurance Co. ("Aetna"), The Rawlings Company, LLC ("Rawlings"),

Southern New Jersey Regional Employee Benefit Fund (the "Fund"),

and Cooper University Health Care ("Cooper"), based on the Fund,

acting through Aetna and Rawlings, seeking allegedly

impermissible subrogation for medical expenses paid as a result

of injuries Eric Mattson sustained in a motor vehicle accident.

     Pending before the Court are two Rule 12(b)(6) motions to

dismiss filed by Aetna and Rawlings, and the Fund.

     For the reasons stated herein, Defendants' motions will be

**GRANTED.**


                    I.   BACKGROUND

     The Court recites the following relevant facts alleged in

Plaintiffs' Amended Complaint:

2

Joan Mattson is a New Jersey resident and employee of the Gateway Regional High School ("Gateway"). (Amend. Compl. ¶¶ 5, 20) The Fund is a joint insurance fund formed pursuant to N.J.S.A. 40A:10-36 for the purpose of providing health care benefits to individuals enrolled with the Fund's members. (Id. at ¶ 8) Gateway is a member of the Fund and, being a Gateway Employee, Ms. Mattson participates in the health benefits plan offered through the Fund. (Id. at ¶¶ 18, 20) Eric Mattson, Ms. Mattson's son, is enrolled under the Fund's health benefits plan as his mother's dependent. (Id. at ¶ 21)

Defendant Aetna administers the Fund's health benefits pursuant to a contract with the Fund. (Id. at ¶ 7) Defendant Rawlings, pursuant to a contract with Aetna, provides Aetna with insurance claims recovery services. (Id. at ¶ 22)

On or about December 13, 2012, Eric Mattson was involved in a motor vehicle accident in New Jersey and suffered severe injuries. (Id. at ¶ 29) He received treatment at Cooper and Ms. Mattson submitted Eric's medical bills to Aetna for payment. (Id. at ¶¶ 30, 33)

Plaintiffs allege that Cooper, a participating provider with Aetna, improperly demanded payment from Plaintiffs of certain hospital bills when Cooper's agreement with Aetna explicitly provides that Cooper bill Aetna only for such charges. (Id. at ¶ 39) First, Cooper sent Plaintiffs a

3

statement in June 2013 requesting $3,036.00.  (Cooper Statement, Ex. 2 to Amend. Compl.)  Then, in August 2013, a debt collector acting on Cooper's behalf sent Plaintiffs a letter stating that Eric owed Cooper over $70,000.  (Cooper Demand Ltr., Ex. 6 to Amend. Compl.)

In addition to the demands from Cooper, Eric received a letter from Rawlings dated July 18, 2013, informing him that his health plan's claim would need to be paid "from any settlement or payment you may receive from another party and/or your own insurance company."  (July 18, 2014, Rawlings Ltr., Ex. 3 to Amend. Compl.)  The letter instructed Eric "to make sufficient allowances to satisfy the health plan's claim in any settlement" he might receive.  (Id.)

Two weeks later, Rawlings sent another letter to Eric's personal injury attorney with "notice that [Aetna] has a claim/lien for medical benefits paid on behalf of" Eric.  (Aug. 1, 2013, Rawlings Ltr., Ex. 4 to Amend. Compl.)  The letter continued as follows:

> This claim/lien applies to any amount now due or which may hereafter become payable out of a recovery collected or to be collected, whether by judgment, settlement, or compromise, from any party hereby notified.  No settlement of any claim should be made prior to notifying our office of the potential settlement and reaching an agreement for satisfaction of [Aetna's] interest.

(Id.)

Plaintiffs then commenced this action in the Superior Court of New Jersey, Law Division, Gloucester County, in September 2014.  In the Complaint, Plaintiffs alleged that the lien/claims asserted by Rawlings on behalf of Aetna and the Fund violated New Jersey laws that prohibit subrogation of health plan benefits, and brought counts under the New Jersey Civil Rights Act ("CRA"), New Jersey Consumer Fraud Act ("CFA"), and New Jersey Truth-in-Consumer Contract Warranty and Notice Act ("TCCWNA").  Specifically, the Complaint cited to (1) N.J.S.A. § 2A:15-97, the New Jersey Collateral Source Statute ("NJCSS"), and (2) N.J.S.A. § 39:6A-9.1, a provision of the Automobile Insurance Cost Reduction Act ("AICRA") governing recovery of personal injury protection benefits from a tortfeasor.  (Compl. ¶¶ 38-40)  Plaintiffs also brought a number of claims resulting from Cooper's allegedly improper billing statement.

Defendants removed to this Court on October 30, 2014, and subsequently filed initial motions to dismiss the Complaint.  In their motions, as one argument against the NJCSS's applicability, Defendants Aetna and Rawlings noted that Plaintiffs had not yet even instituted a separate civil tort action against the alleged tortfeasor involved in the motor vehicle accident.

On November 10, 2014, Eric filed a motor vehicle bodily injury complaint in the Gloucester County Superior Court.

(Amend. Compl. ¶ 44)   In that complaint, Eric brings a count for negligence against the alleged tortfeasor, and a count against his own automobile insurance company for allegedly withheld Personal Injury Protection ("PIP"), Uninsured Motorist ("UM"), and Underinsured Motorist ("UIM") benefits.   (Motor Vehicle Complaint, Ex. 7 to Amend. Compl.)   Plaintiffs thereafter sought leave to file an Amended Complaint in the instant case, which, with the Court's permission, they filed on December 31, 2014.

The lengthy Amended Complaint asserts the following counts: (1) violation of the TCCWNA against Rawlings and Aetna; (2) violation of the CRA, against the Fund; (3) breach of contract against Aetna and the Fund; (4) violation of the covenant of good faith and fair dealing, against Aetna and the Fund; (5) promissory estoppel, against Aetna and the Fund; (6) violation of the CFA, against Rawlings and Aetna; (7) breach of contract, against Cooper; (8) violation of the covenant of good faith and fair dealing, against Cooper; (9) promissory estoppel, against Cooper; (10) violation of the CFA, against Cooper; and (11) declaratory judgment against Aetna.   Counts 3, 4, 5, 7, 8, 9, 10, and 11 all concern Cooper's allegedly improper collection of charges from Plaintiffs.   Counts 1, 2, and 6 each concern the Fund's, Aetna's and Rawlings's allegedly improper subrogation activity.   The Fund, Aetna, and Rawlings subsequently filed the instant motions to dismiss.

On March 26, 2015, Plaintiffs settled with and voluntarily dismissed their claims against Cooper.  In their opposition papers, Plaintiffs concede that their only remaining causes of action concern subrogation activity, specifically (1) Aetna and Rawlings's alleged TCWWNA violation (Count 1), (2) the Fund's alleged CRA violation (Count 2), and (3) Aetna and Rawlings's alleged CFA violation (Count 6).  During oral argument, which the Court held on August 25, 2015, Plaintiffs confirmed that all other counts in the Amended Complaint are moot.

## II.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that make a right to relief more than speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  A court must accept all allegations in the plaintiff's complaint as true, viewing them in the light most favorable to the plaintiff, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), but a court is not required to accept sweeping legal conclusions cast as factual allegations.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The pleadings must state facts sufficient to show that the legal allegations

7

are not simply possible, but plausible. *Phillips*, 515 F.3d at
234. "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   Discussion

At the outset, based on the voluntary dismissal of
Defendant Cooper, the Court will dismiss Counts 3, 4, 5, 7, 8,
9, 10, and 11 from the Amended Complaint as moot.  Remaining are
Plaintiffs' CRA claim against the Fund, and Plaintiffs' CFA and
TCCWNA claims against Aetna and Rawlings.

The relevant issues on Defendants' motions to dismiss can
be distilled as follows: (1) was the Fund, acting through Aetna
and Rawlings, prohibited from seeking subrogation for medical
expenses paid as a result of Eric Mattson's motor vehicle
accident from any judgment, settlement, or other award in
Plaintiffs' pending action against the tortfeasor; (2) if yes,
have Plaintiffs otherwise pled facts sufficient to support their
CRA, CFA and TCCWNA claims; and (3) regardless the claims'
viability, whether Plaintiffs were required to pursue
administrative remedies prior to filing the instant lawsuit.

8

The Court will first discuss the whether the relevant statutes apply to the instant case and then address the merits of Plaintiffs' particular causes of action.

## A. Statutory Schemes

Plaintiffs allege that two New Jersey statutes prohibited Defendants from seeking subrogation for Eric's medical expenses – N.J.S.A. 2A:15-97 (the New Jersey Collateral Source Statute) and N.J.S.A. 39:6A-9.1 (the AICRA statute governing recovery of personal injury protection benefits from a tortfeasor in motor vehicle accident cases).

### 1. The Collateral Source Statute

The NJCSS provides:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

N.J.S.A. 2A:15-97.

The New Jersey Supreme Court has held that the NJCSS does not allow health insurers to recoup funds expended on behalf of

an insured through subrogation or reimbursement when the insured

recovers a judgment against a tortfeasor.  *Perreira v. Rediger*,

169 N.J. 399, 403 (2001).  The *Perreira* court explained as

follows:

> Allowing health insurers to recover funds expended
> pursuant to an insurance contract either by way of
> subrogation or contract reimbursement would reallocate
> the benefit accorded by *N.J.S.A.* 2A:15-97 in
> contravention of the underlying legislative intent.
> Accordingly, we hold such recovery to be interdicted by
> the statutory scheme.

*Id.* Reviewing the legislative history, the Supreme Court stated

that the purposes of the statute – disallowing double recovery

to plaintiffs and containing spiraling insurance costs – could

have been accomplished in two ways: benefit[ting] health

insurers by allowing repayment of costs expended on a tort

plaintiff, or . . . benefit[ting] liability carriers by reducing

the tort judgment by the amount of health care benefits

received."  *Id.* at 410.  The Legislature ultimately chose the

latter.  *Id.* at 411.

The Court stated further that when regulations promulgated

by the Commissioner of Banking and Insurance authorize

subrogation and reimbursement provisions in health insurance

contracts, those regulations "must be interpreted narrowly as

limited to cases in which the collateral source rule does not

apply, for example, a case in which choice of law principles

10

require application of the law of a jurisdiction with a collateral source rule at variance from our own." *Id.* at 416.

The Appellate Division later considered whether the same rule applied when the health benefits provider was a public entity. *See Cnty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J., ACS*, 412 N.J. Super. 126 (App. Div. 2010). *County of Bergen* concerned a health benefit plan established pursuant to N.J.S.A. 40A:10-6(e), which delineates when a "governing body of any local unit may establish an insurance fund." *Id.* at 129. The issue was whether the NJCSS barred that plan from recouping funds expended on an insured's behalf through subrogation or contract reimbursement after the insured settled a separate civil action against a tortfeasor. *Id.* at 131.

Extending *Perreira*, the Appellate Division found "no evidence to suggest that the Legislature intended to favor public entities under [the NJCSS] or that it was not intended to apply to amounts received by a tort plaintiff from public sources." *Id.* at 138. The statute, by its own terms, drew "no distinction between a publicly-funded payment source and a private, for-profit health insurer." *Id.*

Defendants argue that the NJCSS does not pertain to this case for a number of reasons: (1) the NJCSS does not apply to the Fund, which is not an insurance entity, but a publicly-

11

funded "joint insurance fund"; (2) the regulations governing the Fund require that the Fund include a subrogation provision in its bylaws; and (3) by its own terms, the NJCSS does not apply to civil actions brought pursuant to N.J.S.A. 39:6A-1, et seq., and Plaintiffs' pending personal injury action brings claims under that statute against their insurer.

### 2. N.J.S.A. 39:6A-9.1

Plaintiffs' Amended Complaint also alleges that a provision under the AICRA detailing when and how an insurer may recover benefits paid to an insured from a tortfeasor or the torfeasor's automobile insurer also prohibited Defendants from seeking subrogation from Plaintiffs.

The relevant provision states,

a. An insurer, health maintenance organization or governmental agency paying benefits pursuant to subsection a., b. or d. of section 13 of P.L.1983, c. 362 (C.39:6A-4.3), personal injury protection benefits in accordance with section 4 or section 10 of P.L.1972, c. 70 (C.39:6A-4 or 39:6A-10), medical expense benefits pursuant to section 4 of P.L.1998, c. 21 (C.39:6A-3.1) or benefits pursuant to section 45 of P.L.2003, c. 89 (C.39:6A-3.3), as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with section 18 of P.L.1985, c. 520 (C.17:28-1.4), or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident.

b. In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration. Any recovery by an insurer, health maintenance organization or governmental agency pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy.

N.J.S.A. 39:6A-9.1.

Defendants argue that this provision does not prohibit subrogation, but merely "conditions subrogation, regulating how it may occur and limiting the extent of a subrogation recovery, based upon factors such as the tortfeasor's insurer's policy limits and whether the subrogor has been made whole." (Aetna & Rawlings's Motion to Dismiss ("MTD") at 14)  Plaintiffs respond that the statute clearly does not make injured parties personally responsible to pay any subrogation claim and that seeking subrogation from injured parties is therefore unlawful.

### B. Applying the Statutes to the Present Case

The NJCSS, by its own explicit terms, does not apply when the underlying personal injury action by which the insured seeks to recover from a tortfeasor was filed pursuant to AICRA.  *See* N.J.S.A. 2A:15-97 ("In any civil action brought for personal

injury or death, *except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.) . . .")* (emphasis added).  On this basis, Plaintiffs cannot assert that Defendants violated both the NJCSS and AICRA – only one could apply.

With regards to the NJCSS, the case law implies that the statute, and its accompanying prohibition on subrogation, would apply to an entity like the Fund, despite the Commissioner's regulation that the Fund specify its subrogation rights in its bylaws.  *County of Bergen* made clear that the NJCSS draws no distinction between publicly funded health plans and private insurance companies.  Defendants give no reason to treat a "joint insurance fund" created pursuant to N.J.S.A. 40A:10-36 differently than the "insurance fund" in *County of Bergen*, which was created pursuant to N.J.S.A. 40A:10-6.  The entities in *County of Bergen* are otherwise analogous to the present parties – Bergen County's plan, like the Fund, was administered through a third party provider, which subcontracted subrogation services to another entity.  *Cnty. of Bergen*, 412 N.J. Super. at 129.

Neither is the Court convinced by the Fund's claim to "regulatory mandated subrogation rights."  The regulation Defendants cite states that the bylaws of a joint insurance fund shall "[s]pecify the subrogation rights of the fund."  N.J.A.C. 11:15-3.6(b)(3).  This does not "mandate" subrogation rights, as

14

Defendants maintain.  It merely instructs joint insurance funds
to detail any subrogation rights they may have.  Further, The
New Jersey Supreme Court has opined that courts should interpret
regulations authorizing the inclusion of subrogation and
reimbursement provisions in health insurance contracts
"narrowly."  *Perreira*, 169 N.J. at 416.  Considering the NJCSS's
language regarding its inapplicability to certain types of cases
(e.g., workers' compensation benefits), the proper
interpretation of the Commissioner's regulation would be that
the Fund specify those particular kinds of subrogation rights in
its bylaws.

Yet, even accepting that the NJCSS applies to entities like
the Fund, Plaintiffs conceded during oral argument that their
underlying personal injury action falls under AICRA – an action
explicitly excluded from the NJCSS procedure.  The complication
here arises from Ms. Mattson's decision to decline PIP
protection benefits in her automobile insurance policy in favor
of having her health insurance policy with the Fund cover
medical bills.  (Amend. Compl. ¶ 10)  Under AICRA, when an
insured makes such an election, her automobile insurance will be
secondary to her health insurance policy, and will be liable
only for medical expenses not covered by the primary insurer.
N.J.S.A. 39:6A-4.3(d).  In his pending personal injury lawsuit,
Eric has indeed invoked AICRA by suing his automobile insurance

company along with the tortfeasor for allegedly unpaid benefits. Plaintiffs did not respond to this argument in their papers and did not explain during oral argument how the NJCSS and AICRA could apply in the same case.

Turning to the AICRA procedure laid out in N.J.S.A. 39:6A-9.1, Plaintiffs are correct in arguing that the statute does not permit the entity paying health benefits to seek reimbursement from the insured in the insured's personal injury action against the tortfeasor or tortfeasor's automobile insurer.  However, the Court has not found any cases applying this provision of AICRA to an entity like the Fund, and not an automobile insurer, as a result of an insured's decision to decline primary PIP protection benefits from her automobile insurer.

The extent to which the NJCSS and N.J.S.A. 39:6A-9.1 apply to this case is unclear.  However, the Court need not rule at this time whether either statute prohibited Defendants' subrogation activity.  Even assuming one or both statutes apply, Plaintiffs have not pled facts sufficient to state claims under the CRA, CFA, and TCCWNA.

### C. Merits Of Plaintiffs' Causes of Action

As stated above, Plaintiffs' Amended Complaint alleges that the Fund violated the CRA in seeking subrogation to which it was not entitled under New Jersey law, and that Aetna and Rawlings

violated the CFA and TCCWNA for similar reasons.  The Court
addresses each claim in turn.

### 1. CRA Claim Against the Fund

The New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.,
provides as follows:

> Any person who has been deprived of any substantive due
> process or equal protection rights, privileges or
> immunities secured by the Constitution or laws of the
> United States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by
> threats, intimidation or coercion by a person acting
> under color of law, may bring a civil action for damages
> and for injunctive or other appropriate relief . . . .

N.J.S.A. 10:6-2(c).

New Jersey courts have described two circumstances under
which a person may bring a civil action under the CRA: "(1) when
he's deprived of a right, *or* (2) when his rights are interfered
with by threats, intimidation, coercion or force." *Felicioni v.
Admin. Office of Courts*, 404 N.J. Super. 382, 400 (App. Div.
2008).  "To establish a cause of action [under the CRA], a
plaintiff must allege a specific constitutional violation."
*Matthews v. N.J. Inst. of Tech.*, 717 F. Supp. 2d 447, 452
(D.N.J. 2010).  "[A] procedural due process claim cannot be
brought under the NJCRA." *Major Tours, Inc. v. Colorel*, 799 F.
Supp. 2d 376, 405 (D.N.J. 2011).

Plaintiffs do not offer a cogent theory of liability under the CRA.  The Amended Complaint does not identify any specific Federal or State constitutional violation, or any general right to which Plaintiffs were deprived.  In their opposition to the instant motions, Plaintiffs claim only that "the Fund seeks to enforce its alleged subrogation rights against plaintiff in violation of plaintiff(s)' substantive rights pursuant to New Jersey law." (Pls.' Opp. to the Fund's MTD at 14)  Implicit in this allegation is either the NJCSS's or N.J.S.A. 39:6A-9.1's creation of some substantive right to be free from subrogation claims.

In determining whether a statute gives rise to a "right" under the CRA, the New Jersey Supreme Court has applied the same test developed by the Supreme Court in the context of Section 1983, the vehicle for vindicating rights conferred by the Federal Constitution and federal laws. *Tumpson v. Farina*, 218 N.J. 450, 476 (2014).  To prove a statute creates a "right" under Section 1983, a plaintiff must show "(1) Congress intended the statute the benefit the plaintiff; (2) the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States." *Id*. at 475 (internal quotations omitted) (citing

18

*Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  Neither the NJCSS nor N.J.S.A. 39:6A-9.1 satisfy these three factors.

As stated in *Perreira*, the NJCSS's purpose is "to limit the double recovery to plaintiffs that flowed from the common-law collateral source rule and to allocate the benefit of that change to liability carriers."  169 N.J. at 403.  The Legislature did not intend for the statute to "benefit" Plaintiffs; if anything, it accomplished the opposite by eliminating the windfalls to which Plaintiffs might have been privy under the common-law rule.  Liability carriers, not Plaintiffs, benefit from the NJCSS.  The Court therefore holds that the NJCSS does not confer a substantive right on Plaintiffs that may form the basis of a CRA claim.[1]

Plaintiffs fare no better under N.J.S.A. 39:6A-9.1.  "The legislative intent behind this statute was to . . . reduc[e] the cost of insurance for automobile owners and allow[ ] automobile insurers to recover PIP through reimbursement."  *State Farm Mut. Ins. Co. v. Licensed Beverage Ins. Exch.*, 146 N.J. 1, 9 (1996).  The statute does, in this sense, "benefit" Plaintiffs in lowering their automobile insurance costs.  However, this benefit does not flow from Plaintiffs' asserted right to be free

---

[1] Additionally, the NJCSS is clearly a procedural statute.  *See Levine v. United Healthcare Corp.*, 402 F.3d 156, 165 (3d Cir. 2005) ("[T]he law here [the NJCSS] is a general law of civil procedure.").  Since the CRA, unlike Section 1983, does not cover procedural due process violations, the NJCSS cannot serve as the basis of CRA claim.

from subrogation, but from a right conferred on Plaintiffs' automobile insurer.  *See id.* at 10 ("[T]his Court, as well as others, have acknowledged that section 9.1 . . . confers a primary right of reimbursement on the injured party's insurer.") (internal quotations omitted).  The Court cannot find that N.J.S.A. 39:6A-9.1 gives Plaintiffs a clear substantive right to be free from subrogation when such a right would have no relation to the legislative intent behind the statute.

Since neither the NJCSS nor N.J.S.A. 39:6A-9.1 grant Plaintiffs a substantive right to be free from subrogation, the Court will grant the Fund's motion to dismiss Plaintiffs' CRA claim.

### 2. CFA Claim Against Aetna and Rawlings

As an initial matter, allegations of fraud are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires a plaintiff to plead enough factual information to put the defendant on notice of the "precise misconduct with which [it is] charged".  *Frederico v. Home Depot,* 507 F.2d 188, 200 (3d Cir. 2007) (*citing Lum v. Bank of Am.,* 361 F.3d 217, 223-224 (3d Cir. 2004).  The heightened pleading standard set forth in Rule 9(b) will apply to Plaintiffs' CFA claims.  *F.D.I.C. v. Bathgate,* 27 F.3d 850 (3d

Cir. 1994) (affirming District Court's application of Rule 9(b) to CFA claim)

To state a claim under the CFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the Plaintiffs' ascertainable loss." *Frederico,* 507 F.3d at 202 (*citing Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 23-24 (1994)). Here, Plaintiffs' CFA claim fails because they have not sufficiently pled an ascertainable loss.

The CFA does not define what constitutes an "ascertainable loss," but the New Jersey Supreme Court has recognized that the loss must be capable of calculation, and not just hypothetical or illusory. *Thiedemann v Mercedes-Benz USA, LLC,* 183 N.J. 234, 248 (2005); *see also Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057-FLW, 2008 WL 5381227, at *7 n. 3, (D.N.J. Dec. 9, 2008) ("A sufficiently plead ascertainable loss is one with enough specificity as to give the defendant notice of possible damages.").

In their opposition to Aetna and Rawlings's motion, Plaintiffs argue that they sufficiently pled "an ascertainable loss in the form of an improper debt and/or lien proximately cause by defendant(s)' improper efforts to collect sums to which defendant(s) are not entitled." (Pls.' Opp. to Aetna & Rawlings

MTD at 18)   Plaintiffs cite to *Cox v. Sears Roebuck & Co.*, where the New Jersey Supreme Court stated that "an improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the [CFA], because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act." 138 N.J. at 23.   Here, Plaintiffs point to Rawlings's August 1, 2013, letter stating that Eric's medical expenses, on which Aetna claimed to have a lien, amounted to $19,062.10.   (Aug. 1, 2013, Ltr. from Rawlings, Ex. 5 to Amend. Compl.)

This Court finds *Cox* inapplicable to the present facts.   In *Cox*, the plaintiff had entered into a contract with defendant Sears for renovations to plaintiff's kitchen and financed that transaction by charging it to his Sears credit card.   138 N.J. at 7.   The work on plaintiff's kitchen proved faulty, and the cost of repairing the kitchen would have cost plaintiff thousands of dollars.   *Id.* at 10.   The New Jersey Supreme Court found that both the cost of repairing the kitchen, and plaintiff's credit card debt, qualified as losses under the CFA. *Id.* at 23.   With regards to the debt, the Court noted that it "was presumptively collectible prior to the lawsuit, and Sears filed a counterclaim demanding payment of the full contract price.   Sears also filed a lien on plaintiff's house, thereby encumbering the title."   *Id.*

The "claim/lien" referenced in Rawlings's letters to Plaintiffs does not equate to the credit card debt the *Cox* plaintiff had incurred.  Unlike the debt in *Cox*, the claim/lien in this case was not collectible when Rawlings sent the relevant notice.  Plaintiffs had not even filed the underlying personal injury lawsuit, let alone gained some recovery from that action. The claim/lien was never "charged" to any of Plaintiffs' credit cards or accounts.  Neither had Aetna, acting alone or through Rawlings, filed a lien on any of Plaintiffs' property. Plaintiffs have suffered in no discernable way.  Simply put, the alleged harm in this case is illusory.[2]

Accordingly, the Court will grant Aetna and Rawlings's motion to dismiss as to Plaintiffs' CFA claim.

### 3. TCCWNA Claim Against Aetna and Rawlings

The TCCWNA provides:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State of Federal law at the

---

[2] This Court has already rejected prior assertions that *Cox* held CFA plaintiffs need not allege that they suffered any monetary loss.  *See DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038 (D.N.J. 2011).  In *DeHart*, the plaintiffs argued that *Cox* found the CFA "does not require the consumer to have paid the false debt."  *Id.* at 1050.  The Court found "no support for this proposition in either *Cox* or in logic itself," and rejected CFA claims where plaintiffs "have not paid for anything and have not alleged that they will be obligated to pay anything improper in the future."  *Id.*

time the offer is made or the consumer contract is signed
or the warranty, notice or sign is given or displayed.

N.J.S.A. 56: 12-15.

To properly state a claim under the TCCWNA, a plaintiff
must allege each of following: (1) the plaintiff is a consumer;
(2) the defendant is a seller; (3) the "seller offers a consumer
contract" or gives or displays any written notice, or sign; and
(4) the contract, notice or sign includes a provision that
"violate[s] any legal right of a consumer" or responsibility of
a seller. *Watkins v. DineEquity, Inc.,* 591 F. App'x 132, 135
(3d Cir. 2014); *Bosland v. Warnock Dodge, Inc.,* 396 N.J. Super.
267 (App. Div. 2007), *aff'd,* 194 N.J. 543 (2009).  The TCCWNA
only bolsters rights established by other laws; it does not
create any new consumer rights.  *Watkins,* 591 F. App'x at 134.

Since the Court finds that Plaintiffs have not sufficiently
pled a CFA claim against Aetna and Rawlings, Plaintiffs' TCCWNA
claim relies on Defendants' having violated Plaintiffs' alleged
rights under the NJCSS and AICRA.

Aetna and Rawlings present several reasons to dismiss
Plaintiffs' TCCWNA claim.  First, they argue that Plaintiffs do
not qualify as "consumers" under the statute.  Second,
Defendants assert that the notice letters Rawlings sent
Plaintiffs did not violate any clearly established rights at the
time the letters were sent.  Finally, Defendants argue that any

right they may have violated was surely not "clearly established" at the time.

     With regards to whether Plaintiffs qualify as "consumers" under the TCCWNA, Plaintiffs argue that Aetna, through its agent Rawlings, acted as "bailees" on behalf on Plaintiffs. Plaintiffs explain the relationship as follows: Aetna and Rawlings "(1) demand and take money paid for the subrogation claim from plaintiff(s) for payment to the Fund; and (2) Aetna pays medical claims on behalf of the plaintiff(s) and the Fund to third party creditors." (Pls.' Opp. to Aetna & Rawlings MTD at 22-23)  Defendants respond that no elements of a bailment are present here.  The Court agrees with Defendants.

     "The elements of 'bailment' are delivery of personal property by one person to another in trust for a specific purpose, acceptance of such delivery, and express or implied agreement to carry out the trust and return the property to the bailor." *Sgro v. Getty Petroleum Corp.*, 854 F. Supp. 1164, 1174-75 (D.N.J. 1994).  Plaintiffs stretch this definition of bailment beyond recognition.

     As the Court understands it, Plaintiffs claim that they "bailed" money with Aetna and Rawlings by way of Rawlings's subrogation demand, and that such property was returned to Plaintiffs through the medical benefits Eric received.  Yet, Plaintiffs have not actually given Aetna or Rawlings any money,

25

and the demand for such funds post-dated the benefits Eric received.  Under Plaintiffs' theory, Eric had the bailment property returned to him before he put it in another's trust. That explanation defies logic.

In addition, as discussed above, neither the NJCSS nor N.J.S.A. 39:6A-9.1 confer on Plaintiffs a "right" to be free from subrogation.  The NJCSS is a procedural statute aimed at eliminating an insured's double recovery in a personal injury action.  N.J.S.A. 39:6A-9.1 gives injured parties' insurers the right to seek reimbursement from tortfeasors or tortfeasors' insurers.  Even if the Court interpreted those statutes today as conferring such a right on Plaintiffs, the Court could not conclude that the right was "clearly established" at the time Rawlings sent the relevant notices to Plaintiffs in July and August 2013.

Accordingly, the Court will grant Aetna and Rawlings's motion to dismiss as to Plaintiffs' TCCWNA claim.[3]

### IV.   Leave to Amend

In their opposition papers to the instant motions, Plaintiffs ask the Court for leave to amend the Amended Complaint if the Court were to find that the Amended Complaint

---

[3] Since the Court holds that Plaintiffs have not stated claims under the CRA, CFA, and TCCWNA, it need not address whether Plaintiffs exhausted administrative remedies.

fails to state claims under the CRA, CFA, and TCCWNA.  However, the Court sees no way further amendment would provide any more facts to save Plaintiffs' claims.  The Court will therefore deny Plaintiffs' request to amend the Amended Complaint.

## V.   Conclusion

For the reasons set forth above, the Court will **GRANT** Defendants' motions to dismiss.  An appropriate order accompanies this opinion.

Date: August 31, 2015

                                        s/ Joseph E. Irenas           _
                                   **Joseph E. Irenas, S.U.S.D.J.**